## UNITED STATES v. SOUTHERN PAC. CO.

(District Court, N. D. California. December 4, 1908.)

1. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT.

If a carrier hauls over its line any cars which cannot be coupled automatically by impact, either by reason of being improperly equipped or the equipment being out of order, or disconnected, or otherwise inoperative, the act is in violation of the safety appliance law (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]).

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

2. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

The safety appliance statute (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) applies to the coupler on each end of every car subject to the law, and it is wholly immaterial in what condition was the coupler on the adjacent car, or on any other car or cars, to which each car sued upon was or was to be coupled.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

3. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—CONSTRUCTION—PENALTY.

Carriers are required immediately to repair defects in cars caused during the time they are being hauled, if they can do so with the means and appliances at hand at the time and place, or when such condition should have been discovered by the exercise of reasonable care. If requisite means are not at hand, carriers have the right, without incurring the penalty of the law, to haul the defective car to the nearest repair point on their line. But, if they haul such car from a repair point, they are liable for the statutory penalty.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 765, 766; Dec. Dig. § 254.*]

4. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

It is the duty of the carrier, subject to the safety appliance act, to establish reasonable repair points along its line for the making of repairs of the kind necessary to comply with the law. At such repair points there should be the material and facilities to make all such repairs.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

5. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

The railway company is under no obligation to receive from any other company cars defective as to safety appliances, and, when it does receive cars from another company at any point, it must know at its peril that each car so received is equipped with the safety appliances required by law, and that such appliances are in good order and condition.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

6. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

It is the use of a car in a defective condition that the law seeks to prevent, and not the length of the haul.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

7. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—PENALTIES.

If an employé of a railway company deliberately puts coupling devices on a car being used in interstate traffic in a condition which the law

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

undertakes to prevent, then the company is liable to respond under the penalty for the unlawful act of the employé.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 765, 766; Dec. Dig. § 254.*]

(Syllabus by the Court.)

Alfred P. Black, Asst. U. S. Atty., and Monroe C. List, Special Asst. U. S. Atty.

Charles P. Heggerty, for defendant.

DE HAVEN, District Judge (charging jury). You are required to return a verdict in each of these cases. The first one is 13,757, and contains ten causes of actions. The second one is numbered 13,-760, and contains two causes of action.

The first two causes of action stated in No. 13,757 charge a violation of section 1 of what is known as the "Safety Appliance Act." In reference to those two counts, I now instruct you it will be your duty to return a verdict for the government. The remainder of the counts in No. 13,757 charge a violation of section 2 of the safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]). And that you may understand precisely the questions of fact upon which you are called to pass, I will read this section of the law to you:

"That from and after the first day of January, eighteen hundred and ninety-eight it shall be unlawful for any such common carrier"—that is, a common carrier engaged in interstate traffic—"to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

This section of the law applies to the coupler on each end of every car subject to the law, and it is wholly immaterial in what condition was the coupler on any adjacent car or on any car to which each car sued upon was or was to be coupled. The equipment on each end of every car must be in such condition that whenever called upon for use it can be operated without the necessity of men going between the ends of the cars.

The law also means that each car must be equipped with an uncoupling lever on each end thereof, by means of which such car can be at all times uncoupled from another car by a man standing at one end on the side of the car, and without the reasonable necessity of going between such car or any other car, or without going around the end of the train in which said car might be hauled, or without crawling under or over said cars, in order to reach the uncoupling lever of the adjacent car.

While the safety appliance law does not ask a railway company to do the impossible, it does nevertheless place upon such company the responsibility of properly equipping its cars in the first instance, and the maintaining of such equipment in good operative condition at all times thereafter. Of course, if, while a car is being hauled between repair stations, some defect occurs to its safety appliances, such railway company must use the utmost care to discover and repair such defects,

---

*For other cases see same-topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

if the nature of the repairs will permit of their being made at that time and place. Should such defect be of a heavy nature only to be made at repair stations, then the company would have the right, without incurring the penalty of the law, to haul such car to the nearest place where such repairs can be made. In doing this the company cannot choose its place of making repairs, but must avail itself, for that purpose, of the nearest point where, by the exercise of diligence and foresight, it may prepare to make such repairs. And it is the duty of every railway company subject to this law to establish reasonable repair points along its line of railroad for the making of all repairs necessary to comply with the law; that is, it is its duty to establish repair points at all places along the line of road where it is reasonably necessary that they should be established in order faithfully to comply with the law. Inasmuch as inability alone will not excuse a company from a literal compliance with the law, it is the duty of such company to have the material and facilities on hand at every repair point to make repairs of the kind necessary to comply with the provisions of the safety appliance act. And if a defect exists at a repair point, or at any place where such defect could have been repaired, and the company moves the car while in the defective condition, it does so at its peril, and it becomes then subject to the penalty of the law. The law is not satisfied by the exercise of reasonable care to this end; but the company must at its peril discover and repair all defects before removing a car from a repair point.

A railway company is under no obligation to receive from any other company cars defective as to safety appliances, and, when it does receive cars from another company at any point, it must know at its peril that each car so received is equipped with the safety appliances required by law, and that such appliances are in good order and condition.

The penalty under the safety appliance act applies to every defective car hauled contrary to its provisions, whether or not each car was hauled separately or in a train together, and it matters not how far each car was hauled. It is the use of the car in a defective condition that the law seeks to prevent, and not the length of the haul.

Now, as to the different counts:

In the first and second counts of 13,757 you are instructed to find for the plaintiff.

The third count charges the hauling of Chicago, Burlington & Quincy car No. 61488 when the coupling and uncoupling apparatus was missing from the B end, and when said car was chained to another car. If you believe that the defendant so hauled this car from Truckee in this condition, and that Truckee was a repair point along the line of the defendant company, your verdict should be for the government.

The fourth count charges the hauling of Southern Pacific car No. 48602, when the knuckle was missing from the A end and when the car was chained to another car. You are instructed that the law lays an unqualified duty upon a railroad company to keep its coupling devices in a certain prescribed condition, and, if an employé of such company deliberately puts such devices in another condition, which condition the law undertakes to prevent, then the company is liable

to respond under the penalty for the unlawful act of the employé, and if you believe from the evidence that the knuckle was removed from this car for the purpose of chaining it to another car, and that the car was so hauled in interstate traffic in that condition, and in that condition it would be necessary for a man to pass between the end of that car and an adjacent car in order to couple and uncouple them, your verdict should be for the government.

The fifth count charges the hauling of Baltimore & Ohio car No. 57286 when the keeper or inner casting was broken on one end and the uncoupling lever hanging down on the coupler. If you believe that this uncoupling lever was in such condition that any reasonable effort would not operate the same, and that, in order to uncouple this car from another car, it would have been reasonably necessary for a man to go between the cars, and that in that condition the car was hauled over the line of defendant's road in interstate traffic, then your verdict should be for the government on that count.

The sixth count charges the hauling of Chicago, Milwaukee & St. Paul car No. 58960, when the bottom clevis pin was missing on the A end. If you believe that the car was in that condition, and that the absence of this pin rendered the uncoupling lever inoperative, and that in order to uncouple this car from another car it was reasonably necessary for a man to go between the ends of the cars, and that in that condition the car was hauled over the line of defendant's road in interstate traffic, then your verdict should be for the government.

The seventh count refers to a "kinked" chain. If this car left Truckee while the chain was so "kinked," and while in this condition the coupler was inoperative, requiring the reasonable necessity of a man to go between the cars to couple or uncouple them, your verdict should be for the government.

The eighth and ninth counts are similar to the fifth and seventh counts, respectively, and what I have said in regard to those you can apply to these counts.

The tenth and the last count in No. 13,757 charges the use of a locomotive engine when the coupler was missing from the A or front end. It is not necessary that this end of the locomotive was used or was coupled to any car; that is, the front end or A end. It is the use of the locomotive in a defective condition that the law seeks to prevent, and, if you believe that this locomotive was used by the defendant upon its line of railroad in connection with other cars engaged in hauling interstate traffic, and not used for the purpose of taking it to the nearest point where it could be repaired, your verdict should be for the government. Of course, if you find that it was only taken to Sparks, and find that that was the nearest place where it could be repaired, and that it was only taken there for that purpose, then your verdict should be for the defendant on that count.

The first and second counts and the only counts in case No. 13,760 charge the hauling of two cars chained together. If you believe that these cars were delivered to the Southern Pacific Company by another company in such a condition as has been testified to by the witnesses for the government—and you should find that the defendant in hauling interstate traffic used them on its train engaged in interstate traffic,

your verdict should be for the government. One carrier cannot receive a defective car from another carrier and excuse itself. It must discover such defect at its peril before it receives and hauls any such car in interstate traffic.

I may say to you, that you are the exclusive judges of the credibility of the different witnesses who have testified in your hearing; that is, you must determine for yourselves which witness or witnesses you will believe, and then, after you have fixed that in your mind, you are also the exclusive judges of what ultimate facts are shown by such testimony. In considering this testimony, positive testimony is to be preferred to negative testimony, other things being equal; that is to say, when a credible witness testifies as to the existence of a fact at a particular time and place and another equally credible witness testifies to having failed to observe such fact, the positive declaration is ordinarily to be preferred to the negative in the absence of other testimony or evidence corroborating the one or the other. Nevertheless, that is a question for you solely in passing on the weight to be given to this positive and negative testimony. If, in your judgment, the testimony of the witness who says that he did not see a thing is entitled to weight, that the circumstances surrounding him at that time, at the time he made the examination, were such that if the fact had existed he would have seen it, then as a matter of course you would be at liberty to find that the fact did not exist. That is simply a rule of common sense in weighing testimony.

In regard to the burden of proof, the burden of proof is on the government to establish by preponderance of evidence the facts charged in the different counts of the petition. And by a preponderance of evidence is not meant the greater number of witnesses, but it means that evidence which to your mind is the most satisfactory and is entitled to the greatest weight.

A Juror: I should like to ask a question: In taking that engine from Truckee to Sparks, is it a breaking of the law as interpreted by hitching it to a train, or does it have to go down alone?

The Court: If Truckee was a repair point and a place where the engine ought to have been repaired, and it was attached to a train engaged in interstate traffic and taken to Sparks, that would be a violation of the law. But if Truckee was not a repair point, and the engine could not have been repaired at Truckee, and was simply taken down to Sparks for the purpose of repair, I should say that that would not be a violation of the statute.

Another Juror: I should like to ask a question in regard to the two cars at Richmond: Would those two cars be considered as engaged in interstate traffic?

The Court: That is a question for the jury to determine from the evidence in this case. If they were attached to other cars engaged in interstate traffic, then they would be engaged in interstate traffic.

Another Juror: If the engine referred to needed repairs, and could only be repaired at Sparks, but was used between Truckee and Sparks in the hauling of a train as far as that point, should we find for the government?

The Court: If the engine could not be repaired at Truckee, and the company, under the law I have laid down before you, was not required to be able to repair it there, and it was moved to Sparks for the purpose of being repaired, I should say that the mere fact that it was attached to an interstate traffic train would not render the company liable if the main purpose in removing was to repair it.

The jury returned the following verdict: In case 13,760, for the United States; in case 13,757, for the United States on the first, second, third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action set forth in the complaint; and for the defendant on count 10.